**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandy Lou Jensen, ) | No. CV08-1052-PHX-NVW |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Michael J. Astrue, Commissioner of Social ) Security, ) | |
| Defendant. ) | |

Sandy Lou Jensen ("Ms. Jensen") filed suit to challenge the denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). (Doc. # 1.) Ms. Jensen now moves for summary judgment. (Doc. # 17.) Jurisdiction is proper under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, Ms. Jensen's motion will be denied.

**I.   Factual Background**

Ms. Jensen filed her application for Disability Insurance benefits on April 12, 2006. [TR 90-94.] She later amended her application to allege a disability onset date of April 12, 2004. [TR 22.] Her date last insured is December 31, 2004. [TR 18.] She claims that anemia, chronic fatigue, poor appetite, irritable bowel syndrome, problems concentrating, and feelings of weakness prevented her from working between the date of onset and the date last

1 insured ("the relevant time period").  The ALJ denied benefits, finding that her condition 2 would not have precluded work in her past employment, namely, owning and managing fast 3 food and concessions businesses.

4 Ms. Jensen worked as an owner and manager of concessions businesses until leaving 5 the workforce in 2001. [TR 49.] She worked for many years in spite of a long history of 6 anemia and fibromyalgia. [TR 237, 487.] Before and after leaving the workforce, Ms. Jensen 7 sought and obtained treatment for her medical conditions.  On November 20, 2000, she was 8 hospitalized for extreme fatigue and anemia, with a low hemoglobin level measured at 6.6. 9 [TR 237-41.] She was diagnosed with severe iron deficiency anemia and gastrointestinal 10 blood loss of obscure etiology, and an intravenous iron transfusion took place. [TR 236-38.] 11 She underwent hip replacement surgery with good results in November 2002. [TR 46-47.] 12 Ms. Jensen continued receiving iron infusions every few months under a diagnosis of anemia. 13 [TR 225.]

14 By March 2003, tests indicated that Ms. Jensen's hemoglobin levels had reached an 15 acceptable level, and she was feeling well. [TR 222.] Soon her fatigue resumed despite an 16 increased hemoglobin level, and the treating physician opined that the fatigue might be 17 related to depression. [TR 221.] In July, Ms. Jensen complained of difficulty sleeping and 18 fatigue during the daytime, with loss of appetite, feelings of hopelessness, and difficulty 19 concentrating. [TR 501.]  Her primary care physician, Lawrence Ryan, gave her a 20 prescription for anti-depressant medication. [TR 507.]

21 Ms. Jensen noticed improvement in her energy level after taking the antidepressants. 22 She continued to obtain follow-up care relating to her anemia. In November 2003, Dr. Verdi 23 reported as follows: "Sandy is well in clinic.  Her hemoglobin is acceptable."   [TR 219, 24 569.] Dr. Verdi repeated this assessment in January 2004. [TR 218, 568.]  She responded 25 well to an iron infusion in April of that year, and Dr. Verdi once again noted, "Sandy is well 26 in clinic" with increased energy. [TR 217, 567.] Ms. Jensen received treatment for nausea 27 and vomiting that year, diagnosed as gastroesophageal reflux disease. [TR 190.]  Ms. 28 Jensen's hemoglobin level fluctuated over the course of 2004. [TR 269-80.]   She reported

- 2 -

1  additional fatigue and difficulty breathing in October. [TR 216.] Another infusion was
2  prescribed. [TR 216.] She saw Dr. Ryan for a disability consult that November, but failed
3  to appear for a follow-up appointment. [TR 163, 164.]

4        In January 2005, Ms. Jensen received an iron infusion. [TR 202.] She sought
5  treatment for stiffness and a 25-year-long history of fibromyalgia. [TR 490.] A
6  rheumatologist examined her, noting that the condition had progressed over a period of 15
7  years; he added Tramadol to her existing medications. [TR 442-43, 487.] At that time, Ms.
8  Jensen reported no difficulty washing and dressing herself, lifting a drink, walking outdoors,
9  and turning faucets. She reported some but not much difficulty with getting in and out of
10 bed, getting in and out of a car, and bending over to pick up clothing. [TR 490.] She also
11 reported, "I can adequately carry on normal activities *despite discomfort* or limited motion."
12 [TR 491 (emphasis original).]

13       Ms. Jensen's complaints of fatigue persisted throughout 2005, along with the
14 diagnosis and treatment of anemia. [TR 201, 207, 212, 214, 260-66, 562-64.] She continued
15 to seek treatment for fibromyalgia and arthritis, exercising with water aerobics. [TR 339, 361,
16 363, 365, 440, 441, 437.] In late 2005/early 2006, tests revealed minimal nonspecific chronic
17 inflammation in the mucosa of Ms. Jensen's small intestine, gastroesophageal reflux, and a
18 narrowing of the small bowel. [TR 178, 327-35, 432-36, 532, 533-34, 547-49.] In 2006, Ms.
19 Jensen sought additional treatment for fibromyalgia, anemia, asthma, and fatigue. [TR 209,
20 258, 367, 474, 476, 553, 561.] Tests continued to reveal fluctuating and often low
21 hemoglobin and hematocrit, and she received iron infusions. [TR 257, 553, 578-81.]

22       Two individuals evaluated Ms. Jensen's ability to do work in 2006. In May of that
23 year, a physician's assistant with Arthrocare completed a Statement of Ability to do Work
24 Related Activities (physical), opining that Ms. Jensen could lift less than ten pounds, stand
25 or walk for less than two hours, and sit for four to six hours in an eight-hour workday. The
26 assistant opined that Ms. Jensen should never balance, stoop, kneel, crouch, or crawl. [TR
27 339-41.] In November 2006, treating physician Larry Ryan opined that in an eight-hour
28 work day, Ms. Jensen could sit, stand, and walk for less than one hour and could lift or carry

1  less than ten pounds. He noted severe limitations owing to pain, fatigue, poor balance, and
2  problems concentrating because of fibromyalgia, degenerative joint disease, osteoarthritis,
3  and anemia. [TR 630-31.]

4  In the months to follow, Ms. Jensen experienced progressively worse symptoms of
5  fatigue, anemia, and gastroenteritis. [TR 412-15, 468.] She reported some but not much
6  difficulty with ordinary household tasks such as dressing, washing herself, bending over,
7  turning faucets, and getting in and out of a car. [TR 412-15, 456-60.]

8  A disability hearing took place on October 10, 2007. At the hearing, Ms. Jensen
9  testified to chronic fatigue, insomnia, and fibromyalgic pain, claiming that these conditions
10 had forced her to sell her concession business in 2001. [TR 49-50.] She stated that she was
11 taking 2-3 naps a day, could walk only twenty minutes at a time, and could do limited chores.
12 [TR 51, 54-56.] There was vague testimony regarding depressed feelings and problems
13 concentrating. She indicated that with each iron infusion, her condition improves for about
14 two months and then the fatigue returns. [TR 50-51.] She also stated that she drives a mile
15 to visit her parents four or five times a week. [TR 52.] A vocational expert testified that if
16 Ms. Jensen's testimony were accepted as true, then she would not be able to perform any
17 work. [TR 63.] He also testified that a claimant who could perform light work could perform
18 Ms. Jensen's past job as an owner and manager of a concessions business. [TR 62.]

19 Dr. Ray Hughes reviewed Ms. Jensen's records as a non-examining medical
20 consultant some months before the hearing, on February 21, 2007. [TR 404-11.] Dr. Hughes
21 accepted the diagnoses of anemia and fibromyalgia but noted that in the months between the
22 alleged onset of disability and the date last insured, evidence of actual disability was scant.
23 Plainly, Ms. Jensen suffered from these ailments during that time, but her treating physician
24 consistently described her as being "well in clinic," noting at one point that her hemoglobin
25 and ferritin levels were in an "acceptable" range. He attributed her fatigue to depression and
26 it improved with antidepressant medication. Regarding fibromyalgia, Dr. Hughes noted that
27 there was very little information on that condition during the relevant time period. He opined
28 that at that time Ms. Jensen had a residual functional capacity for light work such that she

1  could occasionally lift or carry up to 20 pounds, frequently lift or carry 10 pounds, and stand
2  six hours, and sit six hours during an eight-hour work day with no other limitations noted.
3  [TR 405-11.]

4      Consistent with Dr. Hughes conclusions, the ALJ found that Ms. Jensen was afflicted
5  with anemia and fibromyalgia prior to the date last insured, but that her testimony as to the
6  severity of her conditions was not credible. He noted that she could perform her past relevant
7  work during the relevant time period and thus was not disabled within the meaning of the
8  Social Security Act. [TR 24.] The Appeals Council affirmed the ALJ's decision. [TR 1.]

9  **II.    Analysis**

10      To determine whether a claimant is disabled for purposes of the Social Security Act,
11  the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). In this case, the ALJ denied
12  benefits under step four of the process, which requires the ALJ to determine whether a
13  claimant can perform his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
14  Step four requires the ALJ to review a claimant's residual functional capacity and the
15  physical and mental demands of the work he or she has previously performed. *See id.* If the
16  ALJ determines the claimant has the residual functional capacity required to perform this past
17  work, the claimant is found not disabled.

18      In this case, the ALJ's findings were not legally erroneous and were supported by
19  substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (defining substantial
20  evidence standard). The burden lies with the claimant to prove disability prior to the date last
21  insured. *Id.* § 404.1512(a); *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008); *Roberts v.*
22  *Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). Because "Social Security disability coverage is
23  premised on the recency of work," it is crucial to establish whether the period of disability
24  began prior to that date. Barbara Samuels, 2 *Social Security Disability Claims Practice &*
25  *Procedure* § 22:147 (2008). Ms. Jensen places most of her reliance on medical evidence
26  from outside the relevant time period which, although relevant, does not meet her burden.
27  For instance, Ms. Jensen invokes a treating physician's opinion that she was disabled at the
28  time that he saw her, two years after the date last insured. More helpful to the analysis was

- 5 -

1  the report of consulting physician Dr. Hughes concluding that the medical evidence as a
2  whole would not support a finding of timely disability onset; treatment records from the
3  relevant time period showed effective management of Ms. Jensen's anemia and scant
4  evidence of fibromyalgia. The ALJ was entitled to credit this opinion. It is not in conflict
5  with the belated treating physician's opinion. In light of the medical record, it was also
6  permissible for the ALJ to disbelieve some of Ms. Jensen's testimony regarding the severity
7  of her pain over time. Contrary to the claims of Ms. Jensen, the ALJ did no violence to
8  procedural norms by adopting Dr. Hughes's function-by-function assessment of Ms. Jensen's
9  condition.

### A. Dr. Ryan's Report

The opinion of a treating physician is entitled to great weight and generally receives more weight than the opinion of a doctor who did not treat the claimant. *See Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). Ms. Jensen contends that under this principle, the ALJ erred by disregarding the report of Dr. Ryan, who in November 2006 determined that Ms. Jensen faced severe functional limitations. There are two problems with this argument. Dr. Ryan is not the only physician who treated Ms. Jensen, and his report came nearly two years after the date last insured. The report describes Ms. Jensen's disability many months after the relevant time, but it does not purport to comment on her condition during the relevant time period, nor does it indicate any objective testing of Ms. Jensen's functional limitations. [TR 630-31.] Though a late report can still evidence a claimant's prior disability, *see Morgan v. Sullivan*, 945 F.2d 1079, 1082 (9th Cir. 1991), the probative value of this report is severely limited for the reasons stated above, providing a "specific and legitimate reason" for the ALJ not to rely on it. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.1986)).

1　　　　　The medical record also supports the limited use of this report. Ms. Jensen alleges
2 that her physical limitations forced her to stop working in 2001. Ms. Jensen pursued a
3 medical opinion of disability in 2005. At that time, she reported that she had worked many
4 years despite her fibromyalgia and anemia. Upon consulting a rheumatologist, she reported
5 that she could carry on with normal activities despite her symptoms, with some but not much
6 difficulty with getting in and out of bed, getting in and out of cars, and bending over to lift
7 objects. The medical record shows that the anemia was being treated during the relevant
8 time. The treating physician's reports describe Ms. Jensen as "well in clinic," while reports
9 arising after the relevant time period describe her as severely fatigued. These circumstances
10 and the facts in the medical record constitute "clear and convincing reasons" for the ALJ to
11 look beyond Dr. Ryan's 2006 opinion and credit the report of the medical consultant. *Baxter*
12 *v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

13　　**B.　　Onset Date**

14　　　　　There is no merit to Ms. Jensen's contention that the ALJ improperly addressed the
15 issue of onset date. It is clear that Ms. Jensen suffered from arthritis and anemia years prior
16 to the date last insured; the issue is the point at which those conditions became disabling. "In
17 the event that the medical evidence is not definite concerning the onset date and medical
18 inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the
19 services of a medical advisor and to obtain all evidence which is available to make the
20 determination." *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991). The ALJ did just
21 that by relying on the opinion of a medical consultant. The ALJ also considered the other
22 appropriate factors, including the claimant's allegations, work history, and medical and other
23 evidence.

24　　　　　The Court rejects Ms. Jensen's claim that the consulting physician's report suggests
25 a review of an incomplete record. Pl. Reply at 3-4. This argument is potentially persuasive
26 except that the record does not support it. The consulting physician noted improved
27 hemoglobin levels during 2004, and this statement was accurate. He did not assert constant
28

improvement, and other records showing Ms. Jensen's further deterioration fall outside the relevant time period.

### C. Ms. Jensen's Testimony

"In order to find [a claimant's] testimony regarding the severity of his pain and impairments unreliable, the ALJ was required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). "[Q]uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal quotation marks and citation omitted). Although the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities, *see Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (internal quotation marks and citation omitted), the ALJ's credibility findings must be supported by specific, cogent reasons, *see Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *see also Yuckert v. Bowen*, 841 F.2d 303, 307 (9th Cir. 1988). In weighing the claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

The ALJ was entitled to reject Ms. Jensen's testimony in this case because it conflicted with the medical record, which does not bear out Ms. Jensen's claims of longstanding disability. As already described, the treating physicians during the relevant time period noted Ms. Jensen's general wellness and managed her anemia. Dr. Verdi attributed her fatigue to depression rather than the physical conditions that she claims are now disabling. The medical records from that time contained little detail concerning the diagnosis of fibromyalgia, suggesting that her condition did not require extensive medical care. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Ms. Jensen herself reported no

1  major functional limitations at her disability consultation in early 2005. Not only does this
2  last point fail to corroborate Ms. Jensen's claims, but it even contradicts it, suggesting that
3  she was not substantially limited just a few months after the date last insured.

4        Ms. Jensen is correct to point out that her ability, at the time of the hearing, to perform
5  some household tasks is not necessarily inconsistent with disability and cannot form the sole
6  basis for the ALJ's credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.
7  2001). However, this testimony cannot overcome the dearth of medical evidence from the
8  relevant period, nor does it countermand Ms. Jensen's prior inconsistent statement that she
9  suffered no major functional limitations shortly after the date last insured. When all these
10 relevant factors are taken into account, substantial evidence supports the ALJ's refusal to
11 believe the full extent of Ms. Jensen's subjective pain and fatigue testimony as it bears on
12 her condition during the relevant time period.

13       The ALJ also cited minor inconsistencies in Ms. Jensen's testimony concerning the
14 degree of care she gives to her parents and her statement that she "retired" from work in
15 2001. The Court does not find that these inconsistencies undermine Ms. Jensen's testimony,
16 but substantial evidence still supported the ALJ's negative credibility finding as explained
17 above.

18       **D.**    **Sufficiency of the Residual Functional Capacity Assessment**

19       Contrary to the claims of Ms. Jensen, the ALJ provided an adequate residual
20 functional capacity assessment. Though the text of the ALJ's opinion does not itself
21 chronicle Ms. Jensen's limitations on a function-by-function basis, the opinion incorporates
22 the findings of the consulting physician, Dr. Hughes. Dr. Hughes's report provides precisely
23 the kind of function-by-function assessment contemplated by the rules. Because the report
24 was consistent with the other medical evidence and the ALJ provided a legitimate
25 justification of its adoption, the incorporation of Dr. Hughes's assessment meets the
26 requirements of SSR 96-8p.

27
28

1  The cases Ms. Jensen cites against this conclusion do not prohibit such a practice, and indeed some even seem to condone it. *See Reed v. Massanari*, 270 F.3d 838, 843 n.2 (9th Cir. 2001) (reversing because "the record" lacked any residual functional capacity assessment upon which the ALJ could base his conclusion of non-disability); *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (merely requiring specific findings as to residual functional capacity); *Bowman v. Astrue*, 511 F.3d 1270, 1273 (10th Cir. 2008) (noting that "the record" lacked the necessary functional assessment). Other cases she cites just restate the separate rule that an ALJ may only rely on a non-examining physician's report in certain circumstances, as already discussed. *See Shafer v. Astrue*, 518 F.3d 1067, 1070 (9th Cir. 2008) (holding that it is legal error to "blindly" adopt the residual functional capacity assessment of a non-treating, non-examining physician that is in conflict with other evidence); *Myers v. Apfel*, 238 F.3d 617, 620-21 (5th Cir. 2001) (ALJ failed to fully address each function and failed to resolve inconsistencies between non-treating physician's report and other medical evidence).

Practical concerns also support this outcome. Where a consulting physician has provided the requisite assessment and the ALJ properly justifies its adoption, there seems to be little use in forcing the ALJ to restate the verbiage of the consulting physician. The essential thing is not whether the ALJ incorporates the report by reference or retypes the report itself. It is the extent to which the ALJ may rely on the consulting physician's report in light of the other evidence contained in the record. As the cases already discussed make clear, the ALJ often may not do so. Here, though, the reliance was sufficiently justified.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment [doc. # 17] is denied.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 18th day of March, 2009.

_____
Neil V. Wake
United States District Judge

- 10 -